# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ASHLEY MACKEY,

       Plaintiff,

v.                                                          CV 09-0023 JCH/WPL

STAPLES THE OFFICE SUPERSTORE LLC
and KENDRICK TURNER,

       Defendants.

## ORDER

Ashley Mackey was employed by Staples the Office Superstore in Hobbs, New Mexico from August 2007 to March 2008. She alleges that she was sexually harassed by her manager, Kendrick Turner. Mackey asserts claims of discrimination and retaliation under federal and state statutory law, as well as common law claims for assault and battery and intentional infliction of emotional distress. She seeks compensatory and punitive damages. The case is before me now on Staples' motion for a protective order and Mackey's motions to take additional depositions and to compel discovery from Turner and Staples.

### BACKGROUND

Mackey contends that Staples had a pattern and practice of ignoring sexual harassment complaints in its New Mexico stores. According to Mackey, Staples ratified its managers' sexual harassment by failing to adequately investigate complaints, promoting the managers, and retaliating against women who complained.

Turner was a management trainee at Staples' Las Cruces store from November 2006 to January 2007. He was then transferred to the Hobbs store, where he initially served as operations manager. He was promoted to general manager of the Hobbs store on April 29, 2007.

Mackey has deposed two former Staples employees–Kimberly Arroyos and Georgina Valdez—who claim that they were sexually harassed by Turner in late 2006 and early 2007 respectively. Arroyos worked with Turner at the Las Cruces store. She testified that shortly after Turner was transferred to Hobbs, she reported the harassment to the Las Cruces store's general manager and to Eleanor Nelson, a human resources manager for Staples' New Mexico stores. Arroyos does not believe that Staples investigated her complaint. (Doc. 85 Ex. 2.) Discovery has revealed a written statement by Arroyos, dated February 5, 2007, detailing Turner's sexual harassment of her. The statement is accompanied by a fax cover sheet indicating that the statement was sent to Nelson by the Las Cruces store's general manager. (*Id.* Ex. 3.) Staples has no documentation of an investigation into Arroyos's claims. (*See id.* Ex. 4.)

Valdez worked with Turner at the Hobbs store. She testified that she phoned someone in the human resources department in late March or early April 2007 to report that Turner had been sexually harassing her. (*Id.* Ex. 5.) She also testified that she spoke with Nelson about the harassment at some point and that she told the district manager, Hal Higbee, about it when he made a routine visit to the Hobbs store. Staples has no documentation relating to Valdez's complaints. (*Id.* Ex. 4.)

Mackey alleges that on November 7, 2007, she told Nelson that Turner had been sexually harassing her. Discovery has revealed an email, dated November 14, 2007, from Nelson to the divisional director of human resources, Jonda Rourke. In the email, Nelson states that she and Higbee spoke with Turner that morning about Mackey's claims. The email states, "As we brought

2

up the pattern of now a third female coming forward he said he didn't know and then reminded that the second one situation, he brought to our attention because he had terminated a friend of an associate so the other one complained [sic]."  (Doc. 85 Ex. 6.)  Through discovery, Mackey has learned that the "second one" referenced in Nelson's email is Valdez and that the friend of hers who was fired is Angie Moreno.

On December 10, 2007, Mackey filed a sex discrimination charge with the EEOC.  On February 14, 2008, Cindy Westervelt, a Staples vice president and associate general counsel, submitted a written response to the EEOC.  Among other things, the response states, "There has never been a report of any inappropriate behavior by Mr. Kendrick [sic] — sexual or otherwise."  (Doc. 85 Ex. 7.)

Another former Staples employee, Nancy Duke, has sued Staples in state court, alleging that she was sexually harassed by a different manager at one of Staples' Albuquerque stores.[1]  According to Mackey, Staples learned in March 2007 that Duke's manager was a convicted sex offender.  Numerous high-ranking officials, including Jonda Rourke, were aware of this fact.  In spite of this fact and the fact that Duke had reported being sexually harassed by him, Staples promoted the manager in January 2008 and later transferred him to another store where additional women claim to have been sexually harassed by him.  Furthermore, when Duke filed a police report for assault

---

[1] In her reply regarding the motion for leave to take additional depositions, Mackey quotes from Duke's complaint and from discovery provided by Staples in Duke's case.  She also paraphrases parts of the complaint and describes her "understanding" of the facts of Duke's case.  But she has not provided this Court with any pleadings or discovery from the Duke case.  The facts stated in this order regarding Duke's case are taken from Mackey's reply and are provided solely to give context to the pending motions.  I express no opinion as to whether Mackey's quotations from Duke's complaint or her descriptions of the facts of that case are accurate.

against the manager, Staples attempted to impede the criminal investigation.  He was eventually

convicted of criminal sexual harassment.

## COMPELLING DISCOVERY FROM TURNER

On November 6, 2009, Mackey filed a motion to compel discovery and for sanctions from

Turner.  (Doc. 64.)  Turner is proceeding *pro se* in this case.  Mackey claims that she mailed her first

discovery requests to Turner at the New Mexico address where he had been served with the

summons and complaint.  Turner did not respond to the discovery requests, but he did file an answer

to the complaint.  The answer included a new address in Oklahoma.  Thereafter, Mackey attempted

to send a second set of discovery requests to Turner at the Oklahoma address by certified mail.

These requests were returned as "unclaimed" to Mackey's attorney by the United States Postal

Service.  Mackey also contends that Turner has not provided his initial disclosures.

On November 10, 2009, I conducted a telephonic status conference with Turner and counsel

for Staples and Mackey.  (Doc. 65.)  Turner stated that it is difficult for him to receive certified mail

and that he would respond to the discovery requests if Mackey's attorney would re-send them by

regular mail.  Mackey's attorney indicated that he would do so that day.

Turner never filed a response to the motion to compel.  On December 11, 2009, an

unsuccessful settlement conference was held.  (Doc. 72.)  Shortly thereafter, my office contacted

Mackey's attorney to determine whether the motion to compel would be withdrawn.  Counsel

indicated that he had received some, but not all, of the requested discovery from Turner.  Since that

phone call, nothing further has been filed regarding the motion to compel.

All parties to a suit have an obligation to provide initial disclosures and to respond to

discovery requests.  *See* FED. R. CIV. P. 26(a)(1), (b)(1); D.N.M.LR-Civ. 26.3.  However, counsel

have an obligation to keep the Court apprised of the status of pending motions and to file a notice

of completion of briefing.  *See* D.N.M.LR-Civ. 7.4(a).  Accordingly, Turner shall make his initial disclosures and respond to Mackey's discovery requests to the extent that he has not already done so.  In all other respects, the motion to compel is denied.

COMPELLING DISCOVERY FROM STAPLES

On January 19, 2010, Mackey filed a motion to compel discovery from Staples.  (Doc. 90.) In her fourth request for production of documents, Mackey asked Staples to produce "the entire personnel files and disciplinary files, including any and all documents showing pay raises, promotions, letters from customers, any disciplinary actions, and the reason for termination from employment for Staples employee Angie Marino [sic]."  (*Id.* Ex. 5.)  Staples objected to this request on the ground that it sought immaterial information not reasonably calculated to lead to the discovery of admissible evidence and on the ground that it sought confidential information that would violate Moreno's right to privacy.  (*Id.*)  In her motion to compel, Mackey sought an order requiring Staples to provide Moreno's files and to pay her reasonable attorney's fees for the time expended in obtaining the order.

On February 1, 2010, Staples filed a two-page response to Mackey's motion.  (Doc. 97.)  The response states,  "The discovery Plaintiff seeks is not in any way relevant to the issues in this case; nonetheless, to avoid unnecessary attorneys' fees and costs, on February 1, 2010, Staples produced Angie Moreno's personnel file and termination documents to Plaintiff.  Therefore, Plaintiff's Motion to Compel Discovery is moot."  (*Id.* at 1.)  The response also states that Staples does not intend to waive any objections, "including the utter irrelevance of the documents produced."  (*Id.* at 2.)  The response does not explain why Staples believes the documents are utterly irrelevant, nor does it cite any authority.  The response concludes by seeking an order declaring the motion to compel moot. Along with the response, Staples' attorney emailed me a proposed order stating, "THE COURT

5

HEREBY GRANTS THE DEFENDANT'S REQUEST AND DECLARES PLAINTIFF'S EXPEDITED MOTION TO COMPEL DISCOVERY AS MOOT."

In her reply to Staples' response, Mackey asserts that the motion to compel is not moot because she is entitled to recover the expenses incurred to obtain Moreno's files.[2]

If a motion to compel is granted "or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(A). This provision does not apply if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action," the opposing party's position was "substantially justified," "or other circumstances make an award of expenses unjust." *Id.*

Mackey has demonstrated that she made a good faith effort to obtain the Moreno files without court intervention. She has provided copies of emails from her attorney to Staples' attorney. On December 1, 2009, Mackey's attorney emailed "to see if we can resolve the dispute." (Doc. 98 Ex. 1.) On December 14, 2009, Mackey's attorney again wrote Staples' attorney, stating, "[W]e need to resolve the discovery dispute I wrote you about on December 1, 2009. . . . In particular, we

---

[2] Immediately after Staples filed its response and emailed its proposed order, Mackey's attorney faxed my office a letter, objecting to Staples' characterization of the motion as moot and to Staples' providing an order that had not been agreed upon by counsel. Two days later, Staples responded with a letter of its own. The tone of both letters is inappropriate and unhelpful. I generally allow counsel to submit simple discovery disputes to me by letter, rather than by motion. However, once a motion has been filed, the proper way to proceed is through the filing of responses and replies. Counsel are admonished not to send letters of this type again. Counsel must also maintain a professional and appropriate tenor. This means abstaining from casting aspersions against each other and including lengthy recitations about purported "facts." I am well aware of the contested issues in this case and I do not need to be advised of every salacious detail in the parties' competing versions of the truth.

need the records regarding Ms. Marino's [sic] leaving Staples in order to refute the statement made by Turner to Ms. Nelson when she was investigating Ms. Mackey's complaint that the second harassment complaint (which we have learned was filed by Gina Valdez, a close friends of Ms. Marino's) was false and was motivated by the fact that Turner had fired her friend (Ms. Marino)." (*Id.*)  Mackey's attorney stated that he was "agreeable to a confidentiality order if that is a concern and feel free to draft one that you feel protects the privacy of those documents." (*Id.*)  This email advised Staples' counsel that if he did not respond, a motion to compel would be filed the following week.  A January 7, 2010 email asked Staples' counsel to let Mackey's counsel "know when we can expect the Marino [sic] documents regarding her termination or whether we need to file a motion to compel." (*Id.* Ex. 2.)  Finally, in a January 12, 2010 email, Mackey's counsel stated, "We have been patient in waiting on you in regards to the Marino [sic] documents.  In the event we do not receive a date certain from you as to when the Marino documents will be provided to us within the next three days, we will have a [sic] file a motion to compel.  I think it's been three weeks or more since you said you thought they would be produced." (*Id.* Ex. 3.)

A position is substantially justified if it raises an issue about which there is a genuine dispute or if reasonable people could disagree as to the appropriateness of the position.  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  Put differently, a position is substantially justified if it is "justified to a degree that could satisfy a reasonable person." *Id.*; *see also Hutchinson v. Pfeil*, No. 98-5043, 1999 WL 1015557, at *3 (10th Cir. Nov. 9, 1999) (stating that this quotation from *Pierce* is the controlling definition of "substantially justified" as that term is used in Rule 37) (unpublished).

Staples' refusal to provide the Moreno files does not appear to be substantially justified. Regarding Staples' objection based on Moreno's privacy interest, the fact that a discovery request

"may invade the privacy rights of present or former employees of a party does not of itself make the [discovery] objectionable." *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 197 (D. Kan. 1996); *see also EEOC v. Univ. of Phoenix*, No. CV 05-1048 JB/WPL, 2007 WL 1302578, at *4 (D.N.M. April 10, 2007) ("District courts in this circuit have ruled that alleged private or confidential information must be disclosed in Title VII cases where the information is relevant to the claims brought.") (unpublished). A confidentiality order can usually assuage any privacy concerns. *See Mackey*, 167 F.R.D. at 197. Mackey agreed to be bound by a confidentiality order. Staples eventually provided the files without a confidentiality order, simply redacting some of Moreno's personal information.

Regarding Staples' blanket assertion that the files are utterly irrelevant, the files unquestionably satisfy the minimal standard that governs relevance at the discovery stage. *See* FED. R. CIV. P. 26(b)(1). A "request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party" and a "request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *Hammond v. Lowe's Home Ctrs.*, 216 F.R.D. 666, 670 (D. Kan. 2003) (internal quotation marks and citations omitted). The scope of discovery is particularly broad in employment discrimination cases. *See Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975). Among other things, Mackey sought the Moreno files to determine whether Turner truthfully claimed that Valdez accused him of sexual harassment merely because he fired Moreno. This determination is relevant to Turner's credibility and to the adequacy of Staples' investigation.[3]

---

[3] Staples' attorney included a copy of the Moreno files with the letter he faxed to my office. The documents state that Moreno was terminated on June 28, 2007 for "job abandonment." The documents do not indicate any previous disciplinary action against her.

Under Rule 37, there may be "other circumstances [that] make an award of expenses unjust." The rule also requires that the party resisting discovery be given an opportunity to be heard. Accordingly, Staples will be required to file a response to this order, explaining why Staples, its counsel, or both should not be required to pay Mackey's expenses incurred in making the motion to compel.

ADDITIONAL DEPOSITIONS

In their Joint Status Report and Provisional Discovery Plan (JSR), Mackey and Staples agreed that each of them could conduct ten depositions. (Doc. 17 at 8.) I adopted the JSR as an order of the Court. (Doc. 19.)

To date, Mackey has taken eight depositions. In addition to Arroyos and Valdez, she has deposed Higbee, as well as two store managers who worked at the Hobbs store under Turner's supervision, the Hobbs store's "lead" employee (who Mackey states was in a "quasi-management" position), a Staples employee who claims to have witnessed Turner's harassment of Mackey, and a Staples employee who claims to have had a consensual sexual relationship with Turner. Mackey plans to depose Nelson and Rourke, which will bring the number of depositions to ten.

Mackey seeks leave to conduct up to five additional depositions. She wishes to depose Westervelt, Duke, and Jim Theobald, the regional manager who is Higbee's supervisor. Mackey requests that she be allowed two further depositions if new witnesses are revealed in the depositions of Nelson, Rourke, Westervelt, Duke, or Theobald.

Unless the parties agree, leave of court is required before a party may conduct more than ten depositions. FED. R. CIV. P. 30(a)(2)(A)(i). This provision has two objectives. First, it assures judicial review under the standards of Rule 26(b)(2) for depositions in excess of ten. FED. R. CIV. P. 30 advisory committee's note to 1993 amendment. Second, it emphasizes that counsel have a

9

professional obligation to develop a cost-effective discovery plan.  *Id.*  Leave to take additional depositions should be granted only when consistent with the principles of Rule 26(b)(2).  *Id.*  Rule 26(b)(2) requires the court to limit discovery if it is unreasonably cumulative or can be obtained from another source that is more convenient, less burdensome, or less expensive; if the party seeking the discovery has had ample opportunity to obtain the information; or if the burden or expense of the discovery outweighs the likely benefit—considering the needs and importance of the case, the amount in controversy, the parties' resources, and the importance of the discovery to the issues in the case.  FED. R. CIV. P. 26(b)(2)(C).  "The mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual."  *Dixon v. Certainteed Corp*, 164 F.R.D. 685, 692 (D. Kan. 1996).

Mackey intends to question Theobald regarding his knowledge or role in formulating the response to her EEOC charge, his knowledge of sexual harassment complaints within his region, and "the pattern of rewarding sexual harassment with promotions" in that region.  (Doc. 88 at 6.) Mackey believes that these inquiries will yield relevant information regarding punitive damages.

Mackey does not need to depose Theobald to determine whether he was involved in formulating the response to the EEOC charge; she could get this information through an interrogatory.  Higbee has testified that Theobald participated in the decision to promote Turner in April 2007.  But Higbee also believed that Nelson and Higbee himself were involved in that decision.  Mackey has already deposed Higbee and will soon depose Nelson.  Thus, Theobald's testimony regarding Turner's promotion would be largely cumulative.

Mackey asserts that the facts underlying Duke's suit occurred during the same period as the facts underlying this suit, that the same management personnel were involved in the investigation of Duke's complaints, and that, as in this case, there is an allegation that Staples attempted to

impede a governmental agency's investigation.  It is undisputed that Duke and Mackey were employees of different stores in different cities and that they were allegedly harassed by different managers.  There is nothing to indicate that Duke would have information regarding the core facts of this case.  Mackey apparently believes that Duke's testimony would be relevant to punitive damages.  In this regard, it is important to remember that although a recidivist incident may be punished more harshly than an isolated incident, "courts cannot award punitive damages to plaintiffs for wrongful behavior that they did not themselves suffer." *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 797 (8th Cir. 2004) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422-23 (2003)).  Mackey's counsel is obviously privy to the discovery in the Duke case and will have an opportunity to depose Rourke about her knowledge that Duke's manager was a sex offender. It does not appear that the inability to depose Duke about all of the details of the harassment she allegedly endured will completely preclude Mackey from presenting evidence at trial regarding Duke's case, should the presiding judge deem such evidence admissible.

Mackey has not satisfied the standards of Rule 26(b)(2) as to Theobald and Duke.  Although they may have some discoverable information, that fact does not entitle Mackey to exceed the ten-deposition limit.  *See Dixon*, 164 F.R.D. at 692.  Furthermore, I will not grant Mackey carte blanche to conduct two additional depositions based simply on her attorney's judgment that information gleaned in the depositions of Nelson and Rourke warrants more depositions.

Mackey's request for an additional deposition for the purpose of questioning Westervelt is addressed below in my discussion of Staples' motion for a protective order.

11

PROTECTIVE ORDER

As mentioned above, Westervelt, a Staples vice president and associate general counsel, submitted a written response to the EEOC stating that there had never been a report of any inappropriate behavior, sexual or otherwise, by Turner.  Mackey wants to find out why Westervelt made this statement to the EEOC even though several managers knew that other employees had accused Turner of sexual harassment.  At a minimum, four managers knew about Arroyos's accusation: the general manager of the Las Cruces store; Nelson (the human resources manager for all New Mexico stores); Rourke (the divisional director of human resources); and Higbee (the district manager).  Nelson, Rourke, and Higbee knew that at least two people (Arroyos and Valdez) had previously accused Turner of sexual harassment.  Mackey believes that evidence concerning the incorrect statement is relevant to punitive damages.

The Supreme Court has noted that "a positive element of conscious wrongdoing is always required" for the imposition of punitive damages.  *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 538 (1999) (internal quotation marks omitted).  Under Title VII, punitive damages are available if the employer "engaged in . . . discriminatory practices with malice or with reckless indifference to the [plaintiff's] federally protected rights."  42 U.S.C. § 1981a(b)(1).  "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law . . . ."  *Kolstad*, 527 U.S. at 535.  An employer cannot be held vicariously liable for punitive damages based on the acts of its managerial agents if those acts were "contrary to the employer's good-faith efforts to comply with Title VII."  *Id.* at 545 (internal quotation marks omitted).  Under these standards, evidence that an employer intentionally falsified its response to the EEOC, or that it recklessly included information in the response that it should have known to be false, may be relevant to punitive damages.  *See, e.g., Derijk v. Southland Corp.*, 313 F. Supp. 2d 1168, 1178 (D.

12

Utah 2003) (indicating that evidence that an employer falsified its investigation into a sexual harassment complaint is relevant in determining whether employer made good-faith efforts to comply with Title VII).

During Higbee's deposition, Mackey's attorney asked him if Westervelt relied "on communications from the investigators to write this letter [presumably, the EEOC response]." Staples' attorney objected, citing attorney client privilege and the work product doctrine. (Doc. 85 Ex. 1.) Mackey's attorney then asked, "[W]ere you asked to provide any information to anyone as part of Staples' response?" Staples' attorney objected on the basis of attorney client privilege. (*Id.*) Staples subsequently filed a motion for a protective order, seeking to bar "discovery concerning actions and communications related to Staples' responses to Plaintiff's EEOC charges." (Doc. 77 at 1.) Because Mackey's counsel has also stated his intention to depose Westervelt, Staples' motion also seeks to prohibit that deposition.

A "court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense . . . ." FED. R. CIV. P. 26(c)(1). When the discovery sought appears to be relevant, as in this case, the party moving for a protective order bears the burden of showing good cause. *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992). Staples contends that it is entitled to a protective order because the information requested by Mackey is protected by the attorney client privilege and the work product doctrine. Staples has the burden of establishing that these protections apply. *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995); *In re Grand Jury Subpoena Duces Tecum*, 697 F.2d 277, 279 (10th Cir. 1983).[4]

---

[4] Federal courts are required to apply state privilege law to claims brought under state law and federal privilege law to claims brought under federal law. *See* FED. R. EVID. 501. Mackey asserts claims under both state and federal law. Although most courts have held that federal law controls in this situation, *see Cont'l Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 766 n.3 (D. Md. 2008), the Tenth Circuit has

The Tenth Circuit has condemned blanket assertions of privilege.  *In re Grand Jury Subpoena Duces Tecum*, 697 F.2d at 279 n.1.  Staples' motion seeks to prohibit all "discovery concerning actions and communications related to Staples' responses to Plaintiff's EEOC charges."  The motion sweeps too broadly and amounts to a blanket assertion of privilege.

"[A] general description of the work performed by the attorney is not protected by the [attorney client] privilege.  Likewise, acts or services performed by an attorney during the course of the representation are not within the privilege because they are not communications.  Further, the subject matter of meetings with an attorney, the persons present, the location of the meetings, or the persons arranging the meetings are also not protected by the privilege."  *In re Grand Jury Subpoena*, 246 F.R.D. 673, 679 (D. Kan. 2007) (citations omitted).  "[A]lthough the privilege protects disclosure of substantive communication between attorney and client, it does not protect disclosure of the underlying facts by those who communicated with the attorney."  *Id.* at 678 (internal quotation marks omitted).  The attorney client privilege does not bar discovery of the dates on which an attorney provided her services.  *Condon v. Petacque*, 90 F.R.D. 53, 54 (N.D. Ill 1981).  Similarly, "[b]ecause the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product.  Thus, work product does not preclude inquiry into the mere fact of an investigation."  *Resolution Trust Corp.*, 73 F.3d at 266 (citation omitted).

Under these standards, the protection requested in Staples' motion could encompass information not covered by the attorney client privilege or the work product doctrine.  Moreover,

---

not staked out a clear position.  *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1369 (10th Cir. 1997). Neither Staples nor Mackey has addressed the choice-of-law question, but they cite federal law to support their arguments.  There is no indication that federal and state law diverge on the issues presented in this case. Accordingly, I will apply federal law.

Staples' objections during Higbee's deposition were invalid.  Pursuant to the standards just discussed, the identities of the people consulted by Westervelt are discoverable.

In her response to the motion for protective order, Mackey asserts that Staples has waived any privilege by making a blanket assertion of privilege and refusing to provide a privilege log. Mackey lists five categories of information that she intends to seek in the depositions of several Staples managers, including Westervelt, as well as in requests for production of documents.  First, were the managers asked to provide Westervelt with any information or documents concerning sexual harassment complaints made against Turner?  Second, did the managers provide pre-existing business documents to Westervelt, and if so what documents did they provide and when did they provide them?  Third, if pre-existing business documents were provided to Westervelt, Mackey requests a copy of these documents.  Fourth, if information was provided to Westervelt in some other way (such as through oral or written communications prepared in response to an inquiry from Westervelt), what were the dates and subjects of each communication and who made the communication?  Fifth, what was the content of the communications?

In its reply, Staples does not address its failure to provide a privilege log.  It claims that it has already produced all documents created during the ordinary course of business, including all documents related to its investigation of Mackey's complaint against Turner.  Staples states that it has no objection to providing "the identity of the managers with whom Ms. Westervelt spoke to prepare Staples' EEOC responses; and . . . the production of 'pre-existing business documents' provided to Ms. Westervelt."  (Doc. 93 at 5.)  "Moreover, in a deposition, Staples would not object to counsel asking witnesses whether they spoke with Ms. Westervelt, and inquiring as to any

document created in the ordinary course of business that they provided to Ms. Westervelt (or Staples' legal department) during the investigation into Plaintiff's EEOC charges." (*Id.*)[5]

Based on the language quoted from Staples' reply, Staples has waived any objection to the second and third categories listed in Mackey's response. It has also waived any objection to the fourth category insofar as it seeks the identities of the people who spoke with Westervelt during her investigation of Mackey's EEOC charges. But Staples apparently objects to revealing whether the managers were asked to provide Westervelt with information or documents concerning sexual harassment complaints made against Turner—as requested in the first category—as well as to revealing the date, subject, and content of any oral or written communications (other than pre-existing documents) that were made in response to an inquiry from Westervelt—as requested in the fourth and fifth categories.

The dates and subjects of any oral or written communications made by a Staples employee in response to an inquiry from Westervelt are not protected by the attorney client privilege or the work product doctrine. *See Resolution Trust Corp.*, 73 F.3d at 266; *In re Grand Jury Subpoena*, 246 F.R.D. at 678-79; *Condon*, 90 F.R.D. at 54. Thus, the first and fourth categories of information are discoverable. Indeed, as Mackey points out, this is the type of information that should be included in a privilege log. When a party withholds information on the ground that it is privileged, the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *see also EEOC v. Outback Steakhouse*, 251 F.R.D. 603, 610-11 (D. Colo. 2008) (suggesting what a privilege

---

[5] Staples has obviously changed its position since Higbee's deposition. Then, it objected to the question, "[W]ere you asked to provide any information to anyone as part of Staples' response?"

log should include); *Allendale Mut. Ins. Co. v. Bull Data Sys.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992) (same).[6]

The exact content of the communications between Westervelt and the people she interviewed to prepare the EEOC response are privileged. *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) (noting that a client cannot be compelled to answer the question, "What did you say or write to the attorney?"); *Robinson v. Time Warner, Inc.*, 187 F.R.D. 144, 146 (S.D.N.Y. 1999) (holding that the plaintiff could not inquire into the questions an attorney asked or the answers provided during interviews conducted for an internal company investigation into the plaintiff's discrimination claims). Accordingly, the fifth category of information is not discoverable unless an exception applies.

Mackey argues that the crime-fraud exception applies here because the EEOC response was fraudulent. Neither the attorney client privilege nor the work product doctrine applies when the client consults an attorney to further a crime or fraud. *In re Grand Jury Subpoenas*, 144 F.3d 653, 660 (10th Cir. 1998). "To invoke the crime-fraud exception, the party opposing the privilege must present prima facie evidence that the allegation of attorney participation in the crime or fraud has some foundation in fact." *Id.* Although the Tenth Circuit has not determined the level of proof required to satisfy the prima facie standard, it has stated that the evidence must show that the client was engaged in or planning some criminal or fraudulent conduct when it sought the assistance of

---

[6] Mackey asserts that Staples waived any privilege by failing to produce a privilege log. Allowing privileged material to be discovered is a harsh sanction for failure to produce a timely privilege log. Under the circumstances of this case, I decline to impose this sanction. *See Burlington N. & Santa Fe Ry. v. U.S. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) (rejecting a per se waiver rule when a privilege log has not been timely produced). I will, however, order Staples to produce a privilege log forthwith.

counsel and that the assistance was obtained in furtherance of the conduct or was closely related to it.  *Id.*

Staples asserts that Mackey has failed to establish common law fraud because she has not shown that Staples induced her to rely on the misstatement or that she did rely on it.  However, Mackey is not claiming that she was defrauded, but that the EEOC was defrauded.  *See In re Special September 1978 Grand Jury (II)*, 640 F.2d 49, 60-61 (7th Cir. 1980) (holding that privilege was waived where counsel submitted report to state board of elections that purposely failed to disclose a secret fund); *see also* EDWARD J. IMWINKELRIED, THE NEW WIGMORE, A TREATISE ON EVIDENCE § 6.13.2 (2002) ("While some states limit the notion of fraud to fraud upon the court, a larger number of the jurisdictions make it clear that they construe 'fraud' broadly.").

Staples additionally contends that "[a]t best" Mackey has "alleged" that a statement in the EEOC response was "incorrect" and further states that "the fact that Ms. Arroyos' testimony contradicts one sentence in [the response] fails to establish a prima facie case."  (Doc. 93 at 8.)  But Mackey has done more than merely allege that the statement was incorrect and she is not relying solely on Arroyos's testimony.  Mackey has Valdez's testimony in addition to Arroyos's testimony. She also has Arroyos's written statement, which was apparently faxed to Nelson in February 2007, and Nelson's November 2007 email, which acknowledges two prior sexual harassment complaints against Turner.  Thus, Staples cannot seriously maintain that it was correct for Westervelt to state in February 2008 that "[t]here has never been a report of any inappropriate behavior by Mr. Kendrick [sic] — sexual or otherwise."  Indeed, in its answer to one of Mackey's interrogatories, Staples names the people who investigated Arroyos's and Valdez's complaints in 2007.  (Doc. 90 Ex. 2.)  It would be strange to say the least for Staples to investigate complaints that were never made.

18

Although Staples' arguments are not helpful, I agree that the evidence presented thus far is insufficient to present a prima facie case.  This does not necessarily end the matter however.  The Supreme Court has noted that *in camera* inspection is a smaller intrusion upon the confidentiality of the attorney client relationship than public disclosure.  *United States v. Zolin*, 491 U.S. 554, 572 (1989).  The Court therefore felt it unnecessary to set a "stringent" standard for *in camera* review. *Id.*  The Court held, "Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."  *Id.* (internal citation and quotation marks omitted).  This is a lesser evidentiary showing than is required ultimately to overcome the privilege.  *Id.*  If this showing is made, the decision whether to conduct an *in camera* review is left in the court's discretion.  In exercising its discretion, the court should consider the facts and circumstances of the case, including the volume of materials to be reviewed, the relative importance of the information to the case, and the likelihood that the evidence produced through *in camera* review, together with other available evidence, will establish that the crime-fraud exception applies. The court may also defer an *in camera* review if it concludes that additional evidence in support of the crime-fraud exception may be available that is not allegedly privileged.  *Id.*

The evidence presented thus far may be sufficient to warrant an *in camera* review.  However, neither party has requested an *in camera* review, and I have not been provided with sufficient information regarding the factors listed in *Zolin* to make a proper exercise of discretion on this issue.

Staples must provide Mackey with a privilege log describing each document, communication, or tangible thing (related to the preparation of its EEOC response) that it contends is not discoverable pursuant to the attorney client privilege or the work product doctrine.  Moreover,

Mackey will soon depose Nelson and Rourke and will reconvene the deposition of Higbee.[7]  These depositions may provide information that will strengthen or weaken the impression that the crime-fraud exception applies.  Mackey also apparently plans to propound additional requests for production and those requests may delve into nonprivileged materials related to the EEOC response.  If Mackey continues to believe that the crime-fraud exception applies after conducting this discovery and receiving the privilege log, she may move for *in camera* review.

Finally, I must determine whether Westervelt may be deposed.  The Tenth Circuit has approved three factors for a court to consider when a party wishes to depose opposing counsel: 1) whether any other means exist to obtain the information; 2) whether the information sought is relevant and nonprivileged; and 3) whether the information is crucial to preparation of the case.  *Boughton v. Cotter Corp.*, 65 F.3d 823, 829 (10th Cir. 1995).  Mackey seeks a mixture of privileged and nonprivileged information and, at this point, I am unable to say that the privilege has been waived.  Therefore, I will not allow Westervelt's deposition at this time.  I will revisit this issue if I later determine that the crime-fraud exception applies.

### CONCLUSION

To the extent he has not already done so, Turner must provide initial disclosures and respond to the discovery requests referenced in Mackey's motion to compel by March 2, 2010.  In all other respects, the motion to compel discovery from Turner is denied.

Mackey's motion to compel discovery from Staples is denied as moot, except to the extent that Mackey seeks to recover her expenses for bringing the motion.  No later than March 2, 2010,

---

[7] When Staples' counsel instructed Higbee not to answer questions during his deposition, I adopted Staples' suggestion that I defer ruling on its objections until after the settlement conference.  I advised counsel that if the case did not settle and I overruled Staples' objections, Staples would be required to produce Higbee at Mackey's attorney's office to answer the questions.  (Doc. 71.)

Staples must file a response to this order, explaining why Staples, its counsel, or both should not be required to pay Mackey's expenses incurred in making the motion to compel.

Mackey's motion for leave to take additional depositions is denied.

Staples' motion for a protective order is granted to the extent it seeks to prohibit Westervelt's deposition or to prohibit disclosure of the content of communications with Westervelt.  In all other respects, the motion is denied.  No later than March 2, 2010, Staples must provide Mackey's counsel with a privilege log.

IT IS SO ORDERED.

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.